UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**IN THE MATTER OF THE COMPLAINT OF HINES FURLONG LINE, INC. and HFL VESSELS LLC FOR EXONERATION FROM OR LIMITATION OF LIABILITY**

**Case No. 5:22-cv-00095**

**CLAIMANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE AS TO CERTAIN THEORIES OF CLAIMANTS' COMPARATIVE NEGLIGENCE**

NOW COME Claimants Lee Hawks, Linda Jones, and the Estate of Jackie L. Jones (by Janet Adcock, Executor) ("Claimants"), and move for an Order that Hines Furlong Line, Inc., and HFL Vessels, LLC (collectively, "HFL"), its witnesses and counsel be barred from mentioning, referring to, offering any evidence on, or from questioning any witness as to certain evidence, testimony, or argument that the Claimants were comparatively at fault.

The Claimants move to exclude the specific comparative-fault expert opinions identified below under Fed. R. Evid. 401–403 and 702, to prohibit any contradiction of the precise matters admitted under Fed.R.Civ.P. 36, and, alternatively, to require an opinion by opinion proffer outside the jury's presence. Claimants do not seek an advance ruling that every fact concerning the pleasure vessels is inadmissible or that HFL's negligence necessarily eliminates all comparative fault.

## I. HFL'S EXPERT OPINIONS AS TO COMPARATIVE NEGLIGENCE THAT THE CLAIMANTS SEEK TO PRECLUDE

<u>Captain De Luca</u>

On pp. 41-43 of his report (Exhibit 1), Captain De Luca offered the following summary opinions:

- once the towing operation commenced, Ms. Kalb's navigation of the cruiser into the navigable channel increased the level of risk to Mr. Hawks' vessel and its occupants.
- Ms. Kalb failed to act as a prudent mariner as required by Rule 2 (Responsibility). After recognizing that a storm was approaching, she elected to continue the towing operation rather than reassessing the risk and discontinuing the tow in favor of waiting in a safer location until conditions improved.
- once Ms. Kalb received information from her mother indicating that heavy rainfall was occurring nearby, she had an obligation as a prudent mariner and as an individual who had completed a recreational boating safety course to reassess the conditions and proceed to a safer location to wait for the storm to pass rather than continuing the towing operation.
- Ms. Kalb should have not been towing Mr. Hawks' cruiser according to the Owners manual because of its weight.
- Mr. Hawks failed to act as a prudent mariner under Rule 2 (Responsibility).
- after Mr. Hawks observed the storm approaching and in light of the presence of passengers, including minor children, he had an obligation as a prudent mariner to reassess the risk and recommend to Ms. Kalb to discontinue the towing operation in favor of waiting in a safer location until the storm passed.

- Ms. Kalb failed to maintain a proper lookout as required by Rule 5 Lookout during the towing operation, including during the period when the storm affected their location.
- given the deteriorating weather, reduced visibility, and the presence of commercial traffic within the navigable channel, maintaining an effective lookout was critical. Ms. Kalb's actions did not reflect the level of vigilance required under these circumstances.
- Mr. Hawks failed to maintain a proper lookout as required by Rule 5 Lookout while his vessel was being towed. As the operator of the disabled vessel, Mr. Hawks had an obligation to remain vigilant and maintain a high degree of situational awareness.
- an effective lookout was essential to identifying approaching traffic and assessing risk. Mr. Hawks' conduct did not reflect the level of vigilance required under these conditions.
- Ms. Kalb did not operate her vessel at a speed appropriate for the prevailing circumstances (Rule 6 Safe Speed). By continuing the towing operation under deteriorating weather and visibility conditions without maintaining effective control of her vessel.
- Ms. Kalb increased the risk of collision and thereby exposed both her vessel and its occupants, as well as Mr. Hawks' vessel and its occupants, to unnecessary hazard.

- the decision by Ms. Kalb and Mr. Hawks to continue the towing operation during a severe storm was a substantial contributing factor in the collision with the Warren Hines.
- the visual evidence demonstrates that Ms. Kalb's towing operation was not positioned near the outer limit of the channel as she testified, but instead closer to the center of the navigable channel.
- once Ms. Kalb and Mr. Hawks were effectively disabled in the channel in or near an area of restricted visibility , neither of them employed effective sound signals, visual distress signals, or other means to warn approaching traffic.
- the absence of effective warning from the disabled recreational vessels was a substantial contributing factor to the collision and represents the most direct causal link to the incident.
- the failure of Ms. Kalb to have the required proper sound signaling devices was inconsistent with both recreational boating safety standards and USCG Rules of the Road, particularly when disabled in a channel during reduced visibility.
- Mr. Hawks and Ms. Kalb were familiar with the area where they chose to operate and knew it was an area that was transited by towing vessels. As experienced recreational boaters and in Ms. Kalb's case, having completed a boating safety certification, they had a responsibility to assess navigational risks before getting underway.

- It is my opinion that assessment should have included confirming that required sound signaling equipment and any available visual distress signals were present and in proper working order. Their failure to do so increased the risk to their vessels and the people on board.

Captain Tilford

Captain Tilford opined in his report (Exhibit 2, p. 8) that "the pleasure craft had the same responsibility to the Hines as it had to them. Their failure to take precautions which may be 'required by the ordinary practice of seaman' set up an error chain that directly resulted in the incident." He then offered the following summary opinions:

1. No indication of vessel checks prior to getting underway on either vessel.
2. No evidence of a safety brief for the passengers of either vessel.
3. Not taking due care to consider the possibility of weather forecast variability.
4. Responding to an emergency situation with an 80-year-old non-swimmer aboard.
5. Not demanding all crew of the cruiser transfer to the pontoon.
6. Failure to consider remaining in safe harbor until the storm passed.
7. Failure to consider anchoring the cruiser and leaving it until the weather subsided.
8. Failure to utilize an adequate tow rope and a towing bridle.
9. Failure to illuminate navigation lights as required by Rule 20.
10. Failure to utilize all available means to contact the Hines.

11. Failure to consider how long it would take, at towing speed, to get the pleasure craft to the Hocking River.

12. Failure to cease tow as the weather deteriorated and dark clouds approached.

13. Pontoon's collision with the cruiser and subsequent engine failure.

14. Inability to restart the pontoon. After incident photo, claimants exhibit 01537, shows the pontoon's throttle lever in the reverse position.

15. Failure to file an illumination flair.

16. Failure to detect the Hines and its tow prior to the storm.

17. Failure to energize an anchor light to indicate the inability to maneuver.

Mr. Schoenwald

Retired Coast Guard investigator Brad Schoenwald opined, *inter alia* (Exhibit 3):

Causal 3: Increasing risk exposure and adding distractions during towing. Towing is inherently risky, even for skilled operators with proper vessels in ideal conditions. Adding more risks to this challenging task is unwise; bringing an 80-year-old and a 2-year-old as passengers further increased exposure to potential injury or casualty. (Alexis Kalb Deposition - Exhibit 43.) (Exhibit 3, p. 5)

Dr. Sanders

Finally mechanical engineer Dr. Sanders opined, *inter alia* (Exhibit 4):

2. Overall, the best practice for towing a vessel, particularly in bad weather and with a disabled boat that is larger than the towing vessel, is to summon the law enforcement agency charged with patrolling the waterway. (Exhibit 4, p. 77)

## II. HFL'S ADMISSIONS AS TO LIABILITY AND CAUSATION, AND THE SEQUENCE OF THE COLLISION

Despite its experts' opinions, HFL has made numerous admissions as to liability and causation that take comparative negligence off the table. HFL admitted the following:

- the Claimants' pleasure vessels were vessels not under command before the collision, Exhibit 5, HFL RFA 102;
- the pleasure vessels could not be assumed capable of normal maneuvering and could not reliably remove themselves from the HINES's path, HFL RFA 102;
- its pilot was trained that radar does not reliably detect small pleasure craft in heavy rain, HFL RFA 80;
- this limitation increased collision risk, HFL RFA 81;
- its pilot continued operating when heavy rain prevented reliable visual detection ahead and when radar and other equipment did not reliably detect the small vessels in the flotilla's path, HFL RFA 60, 63;
- one of HFL's Rule 30(b)(6) deponents, Mark Murphy, similarly admitted that the vessel did not proceed at a safe speed sufficient to avoid the collision, Exhibit 6, Murphy Dep. 95:21-96:22;
- Reddig was trained that radar may not pick up small pleasure vessels in heavy rain or limited visibility, HFL RFA 80;
- this limitation increased collision risk, HFL RFA 81;
- available electronic equipment did not reliably identify the Claimants' vessels before impact, HFL RFA 60, 63;

- radar may fail to detect small pleasure craft in heavy rain and that this limitation increases collision risk, HFL RFA 80-81;
- its pilot was subject to Rule 35 and violated it, HFL RFA 84;
- a second HFL Rule 30(b)(6) deponent, its former chief operating officer Glenn Hendon, admitted that HFL left the decision to stop in restricted visibility to its pilot or captain even when the pilot could not see beyond the tow and available equipment could not identify pleasure boats, Exhibit 7, Hendon Dep. 23:11–24:9, 25:16–13, 26:6
- HFL's pilot was following his training when he continued to operate the flotilla in the blind on the day in question, Hendon Dep 24:25-25:6.

## III. BASIC LAW ON RELEVANCE OF AN EXPERT'S OPINIONS

Under Fed.R.Evid. 702, a qualified expert witness may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

"Expert testimony is relevant when it will assist the trier of fact in understanding the evidence or determining a material fact in question." *Flanagan v. Altria Group, Inc.*, 423 F.Supp.2d 697, 699 (E.D. Mich. 2005), *citing Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 592-593, 113 S.Ct. 2786 (1993). "To be relevant the expert's testimony must 'fit' the case, or, in other words, be tied to the facts closely enough to be of use to the trier of fact in resolving the issues in contention." *Lake*

*Michigan Contractors, Inc. v. Manitowoc Co.*, 225 F.Supp.2d 791, 796 (W.D. Mich. 2002), *citing Daubert, supra* at 591-592.

"Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert, supra* at 591 (citation omitted). Put a different way, expert testimony will be relevant if it has "a valid . . . connection to the pertinent inquiry." *Kumho Tire Co. Ltd., v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167 (1999), *citing Daubert, supra* at 592. "Whether an opinion 'relates to an issue in the case' or helps a jury answer a 'specific question' depends on the claims before the court. Thus, when analyzing the relevancy of expert testimony, a court should consider the elements that a plaintiff must prove." *Madej v. Maiden*, 951 F.3d 364, 370 (6th Cir. 2020); *Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.*, 358 Fed. Appx. 643, 652 (6th Cir. 2009) ("expert testimony was "because it went to the only issue before the jury").

## IV. BASIC LAW ON *DAUBERT*

Under Fed.R.Evid. 702, a qualified expert witness may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

In *Daubert*, "the Supreme Court stated that the district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring 'that any and all scientific testimony or evidence admitted is not only relevant, but reliable.' The district court must consider 'whether the reasoning or methodology underlying the testimony is

scientifically valid.'" *Pluck v. BP Oil Pipeline Company*, 640 F.3d 671, 677 (6th Cir. 2011), *quoting Daubert, supra* at 589, 592-593, 113 S.Ct. 2786.

"Although there is no 'definitive checklist or test' to strike this balance, the *Daubert* Court set forth factors relevant to the inquiry: (1) whether the theory or technique can be or has been tested; (2) whether it 'has been subjected to peer review and publication'; (3) whether there is a 'known or potential rate of error'; and (4) whether the theory or technique enjoys general acceptance in the relevant scientific community." *Pluck, supra, quoting Daubert, supra* at 593-594, 113 S.Ct. 2786. "This inquiry is 'a flexible one,' and the factors are neither definitive nor exhaustive." *Pluck, supra* (citation omitted). The Sixth Circuit has "recognized that the *Daubert* factors 'are not dispositive in every case' and should be applied only 'where they are reasonable measures of the reliability of expert testimony.'" *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529 (6th Cir. 2008), *quoting Gross v. Commissioner*, 272 F.3d 333, 339 (6th Cir. 2001).

"Courts have repeatedly found opinions unreliable when they were based more on an expert's 'subjective belief' than on an objective method that can be tested. As we have said, the ipsedixit[1] of the expert alone is not sufficient to permit the admission of an opinion. *Madej, supra* at 375 (cleaned up). Rather, "[e]xpert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010).

---

[1] Ipse dixit means the "bare assertion resting on the authority of an individual." *Estey v. United States*, 2022 U.S. Dist. LEXIS 241044, at 3 n. 3 (W.D. Ky. Nov. 17, 2022), *quoting* Black's Law Dictionary.

## V. THE ABOVE EXPERT OPINIONS ARE NOT HELPFUL TO THE JURY BECAUSE THEY DO NOT HELP THE JURY ANSWER THE SPECIFIC QUESTIONS RAISED IN THIS CASE BECAUSE THEY DO NOT ADDRESS CAUSATION

"[U]nder the general maritime law, the elements of negligence are generally the same as a common law negligence action, i.e. duty, breach, causation and damages." *Hartley v. St. Paul Fire & Marine Ins. Co.*, 118 Fed.App'x. 914, 918 (6th Cir. 2004) (citation omitted). And, in order for HFL to properly invoke the defense of comparative negligence, it has the burden of proving not just that the claimants failed to exercise due care, *Tolar v. Kinsman Marine Transit Co.*, 618 F.2d 1193, 1196 (6th Cir. 1980), but also that such negligence was a proximate cause of the incident. *Caravel/Woodwind Charters, Inc. v. Tahoe Keys Marina, Ltd. Liab. Co.*, 438 F. Supp. 2d 1174, 1182 (E.D. Cal. 2006) ("comparative negligence is the basis for apportionment of fault and causation in admiralty cases"), *citing United States v. Reliable Transfer Co.*, 421 U.S. 397, 411, 95 S.Ct. 1708 ("[I]n a maritime collision . . . liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault"); *United States v. De Vane*, 306 F.2d 182, 187 (5th Cir. 1962) ("Comparative negligence relates to that negligence which is the proximate concurring cause of the injury.").

Thus, "[p]roof of negligence without proof of causation is nothing." *K&M Knights Express, Inc. v. Hullett's Serv. Ctr., LLC*, 2025 U.S. App. LEXIS 4747, at 8 (6th Cir. Feb. 26, 2025) (citations omitted).

Put differently, expert testimony about the Claimants' negligence without evidence of the causal link between such negligence and the incident is irrelevant and not helpful to the jury.

Between Captains De Luca and Tilford, they offered close to forty summary opinions, without explanation, as to the Claimants' negligence. Mr. Schoenfeld and Dr. Sanders offered several more. But nowhere in any of those opinions (or anywhere else in their reports) was an opinion tying that claim of negligence to causation (i.e., that such negligence was a proximate cause of the collision).

And Mr. Schoenwald's opinion in question was simply insulting: he is prepared to tell the jury that bringing an 80-year-old and a 2-year-old as passengers on a pleasure boat is unsafe, period.

Mr. Schoenwald's criticism of carrying an elderly adult and a young child does not itself explain why either vessel collided with the tow. And Dr. Sanders's suggestion to summon law enforcement requires proof of available means, timing, response and a collision-avoidance pathway. Passenger vulnerability may bear on damages, but it is not proof of a Claimant's comparative negligence. The Court should exclude an expert's legal or causal conclusion unsupported by such a foundation and assess any properly offered underlying fact separately.

The bottom line: the experts offer claims of negligence without claims of causation. That, according to the Sixth Circuit, is "nothing." *K&M Knights Express, supra*. These opinions must be excluded as irrelevant under Rule 702.

## VI. THE ABOVE EXPERT OPINIONS ARE NOT HELPFUL TO THE JURY BECAUSE THEY CONTRADICT ISSUES THAT HFL HAS ALREADY ADMITTED

Fed.R.Civ.P. 36(b), "Effect of an Admission; Withdrawing or Amending It," states, "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended…."

A matter admitted under Rule 36 is "'therefore an unassailable statement of fact' that is 'binding' on (i.e., not disputable by other evidence by) the admitter." *Cont'l Ref. Co., LLC v. Hartford Steam Boiler Inspection & Ins. Co.*, 350 F.Supp.3d 601, 610 (E.D. Ky. 2018), *aff'd*, 2019 U.S. App. LEXIS 13380 (6th Cir. May 3, 2019); *see also Wilkins v. City of Chicago*, 2026 U.S. Dist. LEXIS 212158, at 10 (N.D. Ill. Sep. 18, 2026) ("A matter admitted under Rule 36 is 'conclusively established' as true.").

Further, given that Mr. Murphy and Mr. Hendon were HFL's 30(b)(6) witnesses, their testimony is binding on HFL. *Kelly Services, Inc. v. Creative Harbor, LLC*, 846 F.3d 857, 867 (6th Cir. 2017) (citations omitted).

Accordingly, HFL may not offer evidence through its experts that contradict any of the following admissions:

- the Claimants' pleasure vessels were vessels not under command before the collision;
- the pleasure vessels could not be assumed capable of normal maneuvering and could not reliably remove themselves from the HINES's path;
- its pilot was trained that radar does not reliably detect small pleasure craft in heavy rain;
- this limitation increased collision risk;
- its pilot continued operating when heavy rain prevented reliable visual detection ahead and when radar and other equipment did not reliably detect the small vessels in the flotilla's path;
- the vessel did not proceed at a safe speed sufficient to avoid the collision;

- Reddig was trained that radar may not pick up small pleasure vessels in heavy rain or limited visibility;
- this limitation increased collision risk;
- available electronic equipment did not reliably identify the Claimants' vessels before impact;
- radar may fail to detect small pleasure craft in heavy rain and that this limitation increases collision risk;
- its pilot was subject to Rule 35 and violated it;
- HFL left the decision to stop in restricted visibility to its pilot or captain even when the pilot could not see beyond the tow and available equipment could not identify pleasure boats;
- HFL's pilot was following his training when he continued to operate the flotilla in the blind on the day in question.

## VII. THE ABOVE EXPERT OPINIONS ARE UNRELIABLE BECAUSE THEY ARE BASED ONLY ON THE EXPERTS' IPSE DIXIT

These opinions are the very definition of ipse dixit, bare assertions resting on the authority of these experts. *Estey, supra*. That is all that they are. No explanation, no discussion, no tying the opinions into the Inland Navigation Rules or safe boating practices. Just a simple assertion, without any "how" and "why" they reached that result. *R.C. Olmstead, Inc., supra*.

Ipse dixit alone is not sufficient to permit the admission of an opinion, *Madej, supra*, and that is all that those opinions are.

The opinions should be excluded as unreliable under *Daubert* because they are simply ipse dixit opinions. *Rodrigues v. Baxter Healthcare Corp.*, 567 Fed.App'x. 359,

361 (6th Cir. 2014) (the district court properly excluded expert's "unexplained conclusion [because it] failed to connect the dots—to provide a satisfactory reason why contaminated heparin might first cause symptoms more than sixty minutes after doctors administered it," and was thus ipse dixit); *Everest Stables, Inc. v. Rambicure*, 2022 U.S. Dist. LEXIS 41608, at 10-11 (W.D. Ky. Mar. 9, 2022) ("Simply asserting that advice was 'substandard' hardly shows how the conclusion was reached or what the standard of care requires. The Court is not required to admit conclusions 'only by the ipse dixit of the expert' and will exclude Weiss's testimony as unreliable.") (citations omitted); *Henry v. City of Flint*, 2019 U.S. Dist. LEXIS 86225, at 17 (E.D. Mich. Apr. 19, 2019) ("In short, because Dr. Westrick's report fails to provide any reasoning for his opinions, the Court cannot find that they are the result of him reliably applying reliable principles and methods to sufficient facts and data. Thus, the Officers' motion to exclude his testimony should be granted.").

WHEREFORE, the Claimants respectfully request that:

A. HFL, its witnesses and counsel be barred from mentioning, referring to, offering any evidence on, or from questioning any witness as to the above-referenced evidence, testimony, or argument that the Claimants were comparatively at fault.

B. For such other and further relief as may be just.

Dated: October 1, 2026

*/s/ D. Bruce Beaton*
D. Bruce Beaton P32704
Attorney for Claimants
137 S. Water Street
Marine City, MI 48039
Phone: (810) 765-3333
Fax: (810) 765-4026

dbb@dbbeatonlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

*/s/ D. Bruce Beaton*
D. Bruce Beaton